IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MAX MOUSSAZADEH, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CIVIL ACTION NO. G-07-574 |
| | } | |
| TEXAS DEPARTMENT OF CRIMINAL | } | |
| JUSTICE, *et al.*, | } | |
| Defendants. | } | |

OPINION ON DISMISSAL

On October 12, 2005, counsel for state inmate Max Moussazadeh filed in the United States District Court for the Eastern District of Texas, Lufkin Division a complaint seeking injunctive and declaratory relief from defendants to "provide him a nutritionally-sufficient kosher diet" pursuant to the Texas Religious Freedom Restoration Act ("TRFA") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Docket Entry No.1). On February 6, 2006, the Lufkin District Court adopted the Second Report and Recommendation of the Magistrate Judge and dismissed plaintiff's claims arising under TRFA. (Docket Entry No.47). Plaintiff was transferred to the Stringfellow Unit of TDCJ in Brazoria County in May 2007, where a kosher kitchen was in operation. (Docket Entry No.75). In November 2007, a magistrate judge in the Lufkin District Court transferred the case to the present Court. (Docket Entries No.86, No.89). In July 2008, the Court granted plaintiff's Motion to Lift Stay and his Unopposed Motion for a New Scheduling Order and Discovery Plan. (Docket Entry No.108). Within a month, defendants filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (Docket Entry No.110) and moved to stay further discovery. (Docket Entry No.113). The Court granted defendants' opposed motion to stay and ordered plaintiff to file a

response within thirty days. (Docket Entry No.116). Pending are defendants' motion to dismiss and supplemental motion to dismiss (Docket Entries No.110, No.122) and plaintiff's motions for leave to file an amended and supplemental complaint (Docket Entry No.117), for reconsideration of the Court's order to stay discovery (Docket Entry No.119), for summary judgment (Docket Entry No.128), and for an order deeming motion unopposed and for summary judgment. (Docket Entry No.129). For the reasons to follow, the Court will deny plaintiff relief.

## I. CLAIMS

In his original complaint, plaintiff states that he is a sincere adherent of the Jewish faith and therefore, must keep a kosher diet. (Docket Entry No.1). Plaintiff indicates that keeping a kosher diet "includes the adherence of specific rules—commonly referred to as the laws of *kashruth*—derived from the Torah concerning which foods may be consumed and the manner of preparation and service of permitted foods." (*Id.*, page 3). Plaintiff indicates that the three essential qualities of a kosher diet are:

- A. it must be derived from a religiously-acceptable source;
- B. it must be prepared and served in a religiously acceptable way; and
- C. meat and dairy may not be mixed.

(*Id.*, page 4). Plaintiff claims that an institution, like TDCJ, can make a kosher diet available to Jewish believers in at least three of the following ways: "(1) preparing food on site with proper kitchen facilities under the direction of a qualified kosher food supervisor; (2) obtaining pre-packaged meals from kosher food vendors around the country (*e.g.,* sealed airline dinners or shelf stable packaging); or (3) obtaining acceptable kosher products through retail outlets and kosher food purveyors." (*Id.*). Plaintiff also indicates that "the use of disposable plastic or paper

goods and utensils is an easy, cost-effective and religiously-acceptable means of providing kosher food in an institutional environment." (*Id*.).

Plaintiff requested such diet through the prison grievance system on the Eastham Unit of TDCJ in July, 2005, but was denied relief on September 20, 2005. (*Id*., page 5). Plaintiff claims that the majority of states and the Federal Bureau of Prisons accommodate the religious needs of Jewish inmates by providing a kosher diet in their correctional facilities. (*Id.*, page 5). Almost a month after his grievances were denied, plaintiff filed the pending suit. Plaintiff seeks a preliminary and permanent injunction to require defendants to provide him with a kosher diet. (*Id*., page 7). He also seeks a declaration that defendants have violated RLUIPA and TRFA by their failure to provide him with the same. (*Id*.).

Defendants move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) and (b)(6) on grounds that plaintiff's claims are moot and he has not alleged a violation of a clearly-established constitutional right. (Docket Entry No.110). Alternatively, defendants contend the Court should grant summary judgment pursuant to Rule 56(c) because there is no genuine issue as to any material fact with respect to plaintiff's claim. (*Id*.). Plaintiff moves for summary judgment on grounds that TDCJ denied him kosher food at the time he filed the present suit and for nineteen months thereafter in violation of RLUIPA. (Docket Entry No.128).

II. DISCUSSION

A. Plaintiff's Motion for Reconsideration of Order Staying Discovery

On November 19, 2007, plaintiff moved to lift the stay of litigation, which a Magistrate Judge in the Lufkin District Court had entered on April 12, 2007, pending settlement negotiations. (Docket Entry No.85). On November 20, 2007, the Magistrate Judge *sua sponte* ordered the case transferred to the Galveston District Court. (Docket Entry No.86). Citing the

3

November 9, 2007, Status Report (Docket Entry No.82) and the pending Motion to Lift Stay (Docket Entry No.85), the Magistrate Judge noted that the parties had negotiated in good faith to reach a settlement but that negotiations had broken down.  The Magistrate Judge observed that the "source of the breakdown in negotiations is the prison system's insistence that they be allowed to deny the Plaintiff access to nutritionally sufficient kosher meal by transferring him to a different facility with a kosher diet program." (*Id.*).  The Magistrate Judge also noted in the Order of Transfer that plaintiff's primary goal was to obtain injunctive relief and that arguably, his claims became moot when he was transferred to the Stringfellow Unit. (*Id.*).  The Magistrate Judge, however, declined to dismiss the case as moot because "the parties have invested too much time and effort in this case." (*Id.*).  The Magistrate Judge determined that venue was proper in the Galveston District Court because "the primary Defendants are located in the Southern District." (*Id.*).  Neither party objected to the transfer. (*Id.*).

On July 17, 2008, this Court granted the motion to lift stay of litigation and for entry of a new scheduling order. (Docket Entry No.108).  For eight months after the cause was transferred to the present Court and many more months after plaintiff had been transferred to the Stringfellow Unit, plaintiff filed no motions to amend or supplement the pleadings to substitute or add new defendants or to add claims that were not alleged in the original pleading even though such issues were the source of the breakdown in their settlement negotiations.  A month after the Court granted the motion to lift stay of litigation, defendants moved to dismiss the suit or alternatively, for summary judgment on the ground that the case was moot given plaintiff's transfer to the Stringfellow Unit, where a kosher kitchen had been established.  (Docket Entry No.110).  Two weeks later defendants filed an opposed motion to stay the Court's Order of July 17, 2008, on grounds that it was unfair to require further discovery when plaintiff was receiving

the relief that he had requested in his complaint.  (Docket Entry No.114).  Defendants also filed an opposed motion to expedite ruling on their motion to stay discovery.  (Docket Entry No.115).  On September 10, 2008, the Court granted defendants' motions and stayed discovery and depositions; the Court also ordered plaintiff to file a response to defendants' dispositive motion within thirty days of entry of the Order.  (Docket Entry No.116).

On September 11, 2008, plaintiff filed an Opposed Motion for Leave to File an Amended and Supplemental Complaint (Docket Entry No.117) and a Response in Opposition to defendants' dispositive motion.  (Docket Entry No.119).  On September 12, 2008, plaintiff filed an Opposed Motion for Reconsideration and Opposition to Defendants' Opposed Motion to Stay Discovery.  (Docket Entry No.112).  Plaintiff complains in the Opposed Motion that the Court did not give him the opportunity to respond to the motion before entering its Order of September 10, 2008.  (Docket Entry No.119).  Plaintiff also complains that a stay of discovery is prejudicial because he will continue to suffer a substantial delay to his case and to suffer violations of his sincerely held religious beliefs.  (*Id.*).  Plaintiff argues that TDCJ's motion to dismiss cannot dispose of the entire action because a material fact issue exists as to whether the Stringfellow kitchen is certifiably kosher, because TDCJ has asserted a right to deny plaintiff kosher food at any time, and because plaintiff's request for nominal damages would survive even if the Court were to grant defendants' motion to dismiss.  (*Id.*).  Plaintiff claims he needs additional discovery on "(1) the expense of providing kosher food to Jewish inmates in the Texas prison system (particularly in light of the recent creation of the Stringfellow kitchen), (2) the security implications from providing kosher food, and (3) the likelihood that TDCJ will close the kitchen." (*Id.*).

Defendants refute plaintiff's claims for further discovery regarding the expense of providing kosher food to Jewish inmates in the Texas prison system, the security implications of providing kosher food, and the likelihood that TDCJ will close the kosher kitchen because none of these issues go to whether plaintiff is currently receiving a kosher diet, which is the dispositive issue in this case. (Docket Entry No.120). Defendants maintain that plaintiff's purported discovery needs go beyond the scope of permissible discovery because they do not prove or disprove the issue in this case. (*Id.*).

Defendants also refute plaintiff's claim regarding the need to hire a rabbi to inspect the kitchen and certify the food as kosher because defendants hired an expert that was agreeable to plaintiff to establish and supervise the kosher kitchen and to certify it as kosher. (*Id.*). Defendants contend they see no need for a second kosher expert. (*Id.*).

Defendants maintain that plaintiff's allegation that the food served to plaintiff at the Stringfellow Unit is not kosher is a new claim that plaintiff has not asserted in the past sixteen months since he was transferred to the Stringfellow Unit. (*Id.*). Defendants argue that plaintiff has not exhausted his administrative remedies with respect to this claim, that his attorneys have admitted that plaintiff was receiving a kosher diet in their motion to intervene in another RLUIPA case, and that the Stringfellow food operation is kosher as kosher expert Rabbi David Goldstein attests.[1] (*Id.*). Defendants further argue that the nominal damages claim is improper. (*Id.*).

---

[1] Rabbi David Goldstein attests that he helped to establish the Jewish Enhanced Program at the Stringfellow Unit in March, 2007, "which included the opening of a kosher kitchen." (Docket Entry No.121). Rabbi Goldstein further attests that he serves as supervisor for the kosher kitchen and the food cannery at the Unit and that he visits the kitchen weekly to ensure that it is operating according to kosher laws. (*Id.*). He unequivocally attests that the "foods served in the kitchen are kosher. . . . [and] the inmates who work in the kosher kitchen have been properly trained to prepare and handle foods in a kosher manner." (*Id.*). Goldstein attests that such inmates are properly supervised by the Stringfellow kitchen captain, who Goldstein trained and educated, to ensure that kitchen tasks are performed in a proper kosher manner. (*Id.*). Goldstein also attests that he has reviewed the food list for foods

Plaintiff disputes defendants' argument regarding the scope of discovery and defendants' contention that he agreed that Rabbi Goldstein was an agreeable "outside expert," who can certify the kosher nature of the food served on the Stringfellow Unit; plaintiff notes that TDCJ has retained Goldstein to provide contract rabbi services for the last ten years. (Docket Entry No.125). Plaintiff cites the Joint Status Report filed June 30, 2006, as proof that he did not state that Rabbi Goldstein was an agreeable expert. (*Id*.). The report recites plaintiff's settlement offer to include the establishment of a "Kosher Task Force" consisting of Rabbi Dovid [sic] Goldstein, an outside kosher expert agreeable to Plaintiff, and relevant individuals from TDCJ's food services and/or other relevant departments." (Docket Entry No.58). The report also reflects that TDCJ had not accepted or rejected the settlement offer but that TDCJ had included Rabbi Goldstein in its discussions and attempts to collect and analyze information regarding the feasibility of plaintiff's proposal. (*Id*.).

Plaintiff also contends that he did not raise the allegation that the food served on the Stringfellow Unit was not kosher for sixteen months because for the first time during his incarceration he has had the opportunity to eat food that was potentially kosher and because he is not a rabbi and therefore, not qualified to determine whether the food he is eating is kosher. (Docket Entry No.125). Plaintiff further contends that his attorneys' statement regarding the kosher kitchen on the Stringfellow Unit in another RLUIPA case is not an admission but a statement in their argument to the Fifth Circuit that TDCJ had misled the appellate court by

---

purchased for the kosher kitchen and inspected the food and that the foods are properly kosher. (*Id*.). He further attests that for foods that are not readily available and unattainable by TDJC because of a lack of a vendor, he purchases kosher food for inmates from charitable donations. (*Id.*). Goldstein serves on a contract with TDCJ as a Jewish prison chaplain and provides rabbinical services at the Stringfellow, Wynne, Stiles, Darrington, and Terrell Units of TDCJ. (*Id.*).

holding that it could not afford to set up a kosher food program while at the same time attempting to do so. (*Id.*).

The federal rules provide that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery. FED. R. CIV. P. 26(c). Based on the present record, the Court finds that defendants correctly state that no discovery would be needed to resolve their pending motion to dismiss on the ground that the claims raised in plaintiff's original complaint are moot and that to allow additional discovery with respect to these claims would be burdensome and wasteful. The record reflect that none of the monthly status reports filed by the parties expressed concern or complaint that plaintiff was not receiving kosher meals after his transfer in mid-2007 to the Stringfellow Unit, which had an operational kosher kitchen. In the July 2, 2007 Joint Status Report, the parties reported that the Stingfellow "kosher kitchen remains in operation." (Docket Entry No.76). The Joint Status Report filed August 8, 2007, reflects a disagreement between the parties regarding TDCJ dietary policies, but no complaint that plaintiff was not receiving a kosher meal. (Docket Entry No.77). Plaintiff's counsel complained in plaintiff's Status Report, dated November 9, 2007, that TDCJ's policy revisions were unacceptable because TDCJ would not "guarantee that Mr. Moussazadeh will be provided a nutritionally-sufficient kosher diet throughout the duration of his time in TDCJ's custody." (Docket Entry No.82). Plaintiff's counsel did not complain in the same report that the food served to plaintiff was not kosher; he did, however, complain that "Mr. Moussazadeh has been forced to return to litigation because even the attempt to provide a kosher kitchen at the Stringfellow Unit is proving to be inadequate; the meals provided have proven to be nutritionally insufficient." (*Id.*).

Moreover, in Intervenor-Appellants' Motion to Intervene filed May 18, 2007, in *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007), plaintiff's counsel stated that TDCJ has now set up a kosher kitchen at the Stringfellow Unit outside Houston, determined which Jewish prisoners are kosher-observant, and transferred most of those 30 prisoners to the Stringfellow Unit." (Docket Entry No.120, Exhibit E). Plaintiff's counsel argued in the same motion that "[t]his directly contradicts TDCJ's arguments to this Court and the district court that it could not provide these accommodations. In any case, *since the relief sought has been provided by TDCJ, this appeal is moot, and the Court lacks jurisdiction over the appeal*. The Court should therefore vacate its decision and the district court's and dismiss the appeal for lack of jurisdiction." (*Id.*) (emphasis added).

Because defendants advance good cause under Rule 26(c), the Court DENIES plaintiff's Opposed Motion for Reconsideration and Opposition to Defendants' Opposed Motion to Stay Discovery. (Docket Entry No.112).

B. Amended and Supplemental Pleadings

The Court construes plaintiff's Opposed Motion for Leave to File an Amended and Supplemental Complaint (Docket Entry No.117) as follows: Plaintiff seeks to supplement his original complaint by adding Stringfellow Warden James Mossbarger as a defendant in his official capacity and by adding a claim that defendants have continued to deny him a kosher diet on the Stringfellow Unit and refused to guarantee kosher meals if plaintiff is transferred to another unit. (Docket Entry No.117). Plaintiff seeks to amend his original complaint to seek nominal damages and to eliminate his claim under the TRFA. (*Id.*).

Whether to grant or deny a motion for leave to amend pleadings rests in the sound discretion of the district court. *James v. McCaw Cellular Communications, Inc.*, 988 F.2d 583,

587 (5th Cir. 1993). Courts may consider several factors including undue delay, bad faith, dilatory motive, prejudice to the opposing party, and the futility of amendment. *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996). In this case, justice does not require such amendment given the futility of such amendment. *See* FED. R. CIV. PROC. 15(a) (providing for circumstances by which a party may amend a pleading and requiring that leave be freely granted if justice so requires). The Court has already dismissed plaintiff's claim under TFRA and plaintiff concedes that his claim for nominal damages is foreclosed by *Sossamon v. Lone Star State of Texas*, No.07-50632, 2009 WL 382260 at *8 (5th Cir. Feb. 17, 2009) (holding that an action under RLUIPA does not exist for individual-capacity claims and the sovereign immunity of the State of Texas bars any RLUIPA cause of action for official-capacity claims except claims for equitable relief). (Docket Entry No.134).

The Court will also deny plaintiff's motion to supplement his pleading. A district court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. FED. R. CIV. P. 15(d); *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998). A supplemental pleading may bring in new claims and parties when the subsequent events alleged stem from the original cause of action. *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 226-27 (1964). Other than being transferred to the Stringfellow Unit, where Mossbarger is warden, plaintiff sets forth no transactions, occurrences, or events to show that Warden Mossbarger was, or is, personally involved in any capacity with any of the events giving rise to plaintiff's original complaint or to his proposed supplemental claims. Likewise, plaintiff states no specific reason for his belief that the Stringfellow kitchen does not comply with the laws of

*kashruth*,[2] except that the kitchen has not been certified by plaintiff's designated expert. Nor does he set forth transactions, occurrences, or events that would give rise to a claim that TDCJ has denied him kosher meals after he was transferred to the Stringfellow Unit.[3] Moreover, "[l]iberality in pleading does not bestow on a litigant the privilege of neglecting [his] case for a long period of time." *Matter of Southmark Corp*., 88 F.3d 311, 315-16 (5th Cir. 1996). Months after plaintiff was transferred to the Stringfellow Unit, plaintiff and his attorneys were explicitly notified that plaintiff's case was subject to dismissal as moot because he had been transferred to the Stringfellow Unit. Plaintiff, nevertheless, did not move to amend or supplement his complaint with an allegation that he had been denied kosher meals on the Stringfellow Unit until defendants sought to dismiss the complaint as moot. *See e.g. Rainey v. Herrera*, Civil Action No.C-06-097, 2007 WL 2142091, slip op. at 1 (S.D. Tex. July 25, 2007) (applying the Rule 15(a) factors in denying plaintiff's motion for leave to file supplemental complaint).

With respect to petitioner's proposed claim that TDCJ has refused to guarantee that he will received kosher meals if he is transferred off the Stringfellow Unit, the Court finds that plaintiff's request for a permanent injunction, requiring defendants to provide him with a nutritionally sufficient kosher diet, sufficiently incorporates this claim. Accordingly, plaintiff's Opposed Motion for Leave to File an Amended and Supplemental Complaint (Docket Entry No.117) is DENIED.

---

[2] Plaintiff concedes that he receives food from a separate kitchen at the Stringfellow Unit, although he complains that the kitchen provides only dried cereal, boiled potatoes, tofu, and other vegetarian fare. (Docket Entry No.117).

[3] Moreover, the record does not show that plaintiff or any other Jewish inmate at the Stringfellow Unit has complained, grieved, or attested that the food served at the Stringfellow Unit is not kosher.

## C. Motion to Dismiss

Pending are defendants' Motion to Dismiss, or In the Alternative Motion for Summary Judgment (Docket Entry No.110) and Supplemental Motion to Dismiss or, In the Alternative, Motion for Summary Judgment (Docket Entry No.122), and plaintiff's Motion for Summary Judgment. (Docket Entry No.128).

Defendants seek dismissal of plaintiff's complaint under Rules 12(b)(1) and (6) and 56(c) of the Federal Rules of Civil Procedure on the ground that plaintiff has received the relief sought by his voluntary transfer to the Stringfellow Unit. (Docket Entry No.110). Defendants also claim that because of the Fifth Circuit's holding in *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), plaintiff's complaint is factually and legally insufficient to state a claim under RLUIPA. (Docket Entry No.122).

Plaintiff argues that a material fact question exists as to whether plaintiff is actually receiving kosher food on the Stringfellow Unit. Plaintiff also argues that even if he were receiving kosher food, he would still have a right to declaratory and injunctive relief, and nominal damages "because his claims fall well within two exceptions to mootness: voluntary cessation and capable of repetition yet evading review." (Docket Entry No.118). Plaintiff further argues that *Baranowski* holding does not overcome plaintiff's summary judgment proof. (Docket Entry No.127). Plaintiff seeks summary judgment on the ground that defendants have violated RLUIPA by denying him a kosher diet. (Docket Entry No.128).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim. *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A Rule 12(b)(1) motion to dismiss should be granted "only if it

appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Id.*

A party may bring either a "facial attack" or a "factual attack" upon a complaint's subject matter jurisdiction pursuant to Rule 12(b)(1). *See Rodriguez v. Tex. Comm'n on the Arts*, 992 F.Supp. 876, 878 (N.D. Tex. 1998), *aff'd* 199 F.3d 279 (5th Cir. 2000). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *See id.* (citation omitted). A facial attack usually occurs early in the proceedings and directs the court's attention only to "the sufficiency of the allegations in the complaint because they are presumed to be true." *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction. However, if the defendant supports the motion with evidence, then the attack is factual, and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). In a factual attack, matters outside the pleadings, such as testimony and affidavits, may be considered. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Moreover, a factual attack may occur at any stage of the proceedings. *Id.* Regardless of the nature of the attack, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id.*

Defendants' mootness contention is a factual attack, requiring the Court to look at matters outside the pleadings. *See id.* Accordingly, no presumption of truth attaches to plaintiff's factual allegations concerning mootness. *See Williamson*, 645 F.2d at 412.

The argument that a claim is moot challenges the court's jurisdiction. *See Eddins v. Excelsior Ind. Sch. Dist.*, 88 F.Supp.2d 695, 701 (E.D. Tex. Mar. 15, 2000). A claim becomes moot if it "no longer present[s] a case or controversy under Article III, § 2 of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Under the case or controversy requirement, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Id*. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Id.*

The Declaratory Judgment Act also requires an "actual controversy" between the parties before a federal court may exercise its jurisdiction. 28 U.S.C. § 2201(a); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). The standard under Article III "is identical to the actual controversy requirement under the Declaratory Judgment Act." *Texas v. West Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989). A district court lacks subject matter jurisdiction to issue a declaratory action pursuant to 28 U.S.C. § 2201(a) unless an actual controversy exists. *Id.*.

> RLUIPA provides the following, in pertinent part:
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1)   is in furtherance of a compelling governmental interest; and
>
> (2)   is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a) (1)-(2). The religious adherent bears the threshold burden of proving the existence of a substantial interference with a religious exercise. *Id.* § 2000cc-2(b). If a substantial burden is proven, the government must demonstrate that compelling interest test is satisfied. *Id.*

14

Keeping kosher qualifies as a religious exercise for the practice of Judaism under RLUIPA. *Baranowski,* 486 F.3d at 124). "Given the strong significance of keeping kosher in the Jewish faith, the TDCJ's policy of not providing kosher food may be deemed to work a substantial burden upon [a Jewish inmate's] practice of his faith. *Id*. at 125; *see also Adkins v. Kaspar*, 393 F.3d 559, 569-71 (5th Cir. 2004) (defining a substantial burden as an action by defendants that either influences the plaintiff to act in a way that violates his religious beliefs or forces him to choose between enjoying some generally available, non-trivial benefit or following his religious belief). RLUIPA is not violated "where the defendant did not provide kosher meals based on the compelling governmental interests of maintaining security and 'abating the costs of a prisoner's keep'" and where "the administrative and budgetary interests at stake cannot be achieved by any different or lesser means." *Id.* at 125-26 (quoting *Andreola v. Wisconsin*, 211 Fed. Appx. 495, 498-99 (7th Cir. 2006) (unpublished) and comparing *Cutter v. Wilkinson*, 544 U.S. 709, 726 (2005)).

Plaintiff seeks declaratory and injunctive relief from the Eastham Unit's refusal to provide him with a nutritionally balanced kosher diet. (Docket Entries No. 1, No.117, No.127, No.128). As previously discussed, defendants contend, and plaintiff concedes, that plaintiff is no longer incarcerated on the Eastham Unit but has been transferred to the Stringfellow Unit, where TDCJ has established a Jewish Enhanced Program and a kosher kitchen.   (Docket Entries No.110, 118). Plaintiff, however, contends his claims are live for the following reasons:  First, he denies that the food he is now receiving is kosher; therefore, he claims a material factual dispute exists over whether he has received any of his requested relief. Second, he argues that even if he is now receiving kosher food, the voluntary cessation of the illegal conduct on the Eastham Unit does not make the case moot and the alleged violation is capable of repetition.

Finally, plaintiff seeks nominal damages, a claim which plaintiff concedes is foreclosed by the holding of the *Sossamon* Court. (Docket Entries No.118, No.134).

After a thorough review of the entire record, the Court finds no issue of material fact with respect to whether the food served to plaintiff on the Stringfellow Unit is kosher for the reasons previously discussed. Although plaintiff decries that he was not allowed to independently certify that the kitchen was kosher (Docket Entry No.118), plaintiff state no facts to support his claim that he has continued to be denied kosher food at the Stringfellow Unit other than the fact that he does not know if the food is kosher because he is not an expert and that the food served at the Unit does not conform to a kosher menu that he purportedly attached to his declaration. (Docket Entry No.128-2, page 4). Moreover, he provides no other probative evidence to support his claim that the food served to him on the Stringfellow Unit is not kosher.[4] On the other hand, defendants' exhibits support their claim that the Stringfellow kitchen is kosher and the food prepared and served to Jewish inmates on the unit, including plaintiff, is kosher. (Docket Entries No.110, No.120, No.121, No.122, No.123, Exhibits).

Plaintiff is no longer incarcerated on a TDCJ Unit that is incapable of providing him with a kosher diet to accommodate his religious beliefs. Because he has been transferred to the Stringfellow Unit, where kosher food is prepared and served in a kosher kitchen, plaintiff's request for injunctive and declaratory relief is moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (finding that request for injunctive and declaratory relief becomes moot when

---

[4] Plaintiff attached the affidavit of Billy Pierce, the Director of the TDCJ's Chaplaincy Department, which was filed in the *Baranowski* case. (Docket Entry No.128-9). Pierce attests in the affidavit, dated October 21, 2004, that "[n]o TDCJ unit is currently set up to accommodate a kosher diet, which requires food preparation under certain ritual requirements and without contact with non-kosher food." (*Id*., page 4). Plaintiff has also attached defendants' second and third supplemental responses to plaintiff's first set of interrogatories, signed and dated by defendants' counsel in 2008, which recite whole portions of Pierce's affidavit, including the statement that no TDCJ unit currently set up to accommodate a kosher diet. (Docket Entries No.128-4, No.128-5).

inmate leaves the complained-of prison facility, and "[a]ny suggestion of relief based on the possibility of transfer back to the [facility] is too speculative to warrant relief).

Plaintiff, however, contends the voluntary cessation of defendants' illegal conduct on the Eastham Unit does not make the case moot. (Docket Entry No.118). The standard for determining whether a case has been mooted by a defendant's voluntary conduct is stringent. "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon*, No.07-50632, 2009 WL 382260 at *4 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs, Inc*., 528 U.S. 167, 189 (2000)). The party asserting mootness bears the heavy burden. *Id.*

Under Fifth Circuit precedent, RLUIPA is not violated by TDCJ's failure to provide a kosher diet to a Jewish inmate at the unit of his incarceration because of compelling administrative and budgetary constraints. *Baranowski*, 486 F.3d at 125-26. Defendants concede that plaintiff was not served kosher food on the Eastham Unit of TDCJ. Defendants, however, have shown that notwithstanding *Baranowski*, it sought to lessen the substantial burden on the religious expression of plaintiff and other like inmates by transferring them to the Stringfellow Unit, where a kosher kitchen has been established. (Docket Entry No. 121).

"[C]ourts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity—a practice that is reconcilable with *Laidlaw*." *Sossamon*, No.07-50632, 2009 WL 382260 at *4 (citations omitted). "Although *Laidlaw* establishes that a defendant has a heavy burden to prove that the challenged conduct will not recur once the suit is dismissed as moot, governmental actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are

public servants, not self-interested private parties. Without evidence to the contrary, [the Court] assume[s] that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* In this case, the good faith nature of TDCJ's policy is buttressed by the fact that the State of Texas has given plaintiff that which he did not obtain under Fifth Circuit precedent or in district court.

Plaintiff also complains that TDCJ's alleged RLUIPA violation falls within a separate exception to mootness in that it is capable of repetition yet evading review. (Docket Entry No.118). Plaintiff contends in this case that the issues have not been fully litigated and the State of Texas has asserted the right to subject plaintiff to the same action again. (*Id.*). Plaintiff claims that "TDCJ refused to accept any agreement that guaranteed kosher food throughout Moussazadeh's period of incarceration." (*Id.*).

"Although a case may appear to be technically mooted, a continuing controversy exists if the problem is likely to recur yet evade review. . . . For a case to fall within this category, two requirements must be met:  (1) the duration of the challenged action must be too short to allow full litigation; and (2) a reasonable expectation must exist that the same party will be subjected to the same action again." *Pierce v. Winograd*, 757 F.2d 714, 715 (5th Cir. 1985) (citations omitted). Defendants correctly contend that issues regarding plaintiff's right to a kosher diet if TDCJ were to cease its kosher kitchen in the future or transfer plaintiff to a different unit where he was unable to obtain a kosher meal are capable of review. (Docket Entry No.122). The disposition of the pending suit does not preclude plaintiff from exhausting his administrative remedies and filing another suit in federal court. Moreover, given the extent to which TDCJ has attempted to accommodate plaintiff's religious beliefs, the Court finds that any

claim that plaintiff might be transferred to another unit, where kosher food is unavailable, is too speculative to avoid mooting the case.

Accordingly, the Court finds that this Court lacks subject matter jurisdiction to address the merits of plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendants' motion to dismiss (Docket Entries No.110, No.122) is, therefore, GRANTED.

### III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendants' Motion to Dismiss (Docket Entries No.l10, No.122) is GRANTED. All claims against all defendants are DISMISSED. Plaintiff's complaint is DISMISSED WITH PREJUDICE for want of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

2. Plaintiff's Opposed Motion for Leave to File an Amended and Supplemental Complaint (Docket Entry No.117), Opposed Motion for Reconsideration and Opposition to Defendants' Opposed Motion to Stay Discovery (Docket Entry No.119), Motion for Summary Judgment (Docket Entry No.128) are DENIED.

3. All other pending motions are DENIED AS MOOT.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 26th day of March, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE