## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

MAX MOUSSAZADEH,

        Plaintiff,

    v.

TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, *et. al.*

        Defendants.

Case No.  3:07CV574

United States Courts
Southern District of Texas
FILED

APR  8 2011

, Clerk of Court

### STATEMENT OF INTEREST OF THE UNITED STATES

This litigation implicates the proper interpretation and application of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 20000cc *et seq.* ("RLUIPA"). RLUIPA protects the religious freedom of individuals confined to institutions, providing that their religious exercise may only be substantially burdened if there is a compelling state interest in doing so, and if the institution uses the least restriction on religious exercise necessary to further that interest. *See* 42 U.S.C. § 2000cc-1(a).  The United States enforces RLUIPA in state and local jurisdictions across the country and, given the important liberties at stake, has a strong interest in ensuring that RLUIPA's requirements are vigorously and uniformly enforced.  The United States files this Statement of Interest pursuant to 28 U.S.C. § 517.

Defendants, the Texas Department of Criminal Justice ("TDCJ"), *et al.*, have denied Mr. Moussazadeh's request for a kosher diet as a religious accommodation.  This policy can only be

sustained under RLUIPA if Defendants prove that this restriction furthers a compelling

governmental interest and is the least restrictive alternative for furthering that interest.  42 U.S.C.

§ 2000cc-2(b).  TDCJ makes a naked assertion that the policy is necessary to advance a

purported compelling interest in controlling costs.  As explained below, costs savings alone do

not qualify as compelling governmental interest under RLUIPA.  Even if cost savings qualified,

TDCJ's conclusory assertion that its refusal to accommodate Mr. Moussazadeh's request for a

kosher diet represents the least restrictive means of furthering this cost savings interest fails.

Thirty-two states and the Federal Bureau of Prisons already provide such kosher meals.

Because Defendants' position substantially departs from RLUIPA's requirements and the

practices of many other jurisdictions with interests identical to those of TDCJ, this Court should

find that TDCJ has failed to satisfy its burden of demonstrating that its denial of a kosher diet

represents the least restrictive means of furthering a qualifying compelling governmental interest.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Moussazadeh is an observant Jew who maintains that keeping a kosher diet is

fundamental to his religion.[1]  Plaintiff's Motion for Summary Judgment at 8 ("Pl. MSJ"), Dkt.

No. 199; Defendants' Second Motion for Summary Judgment at 22 ("Def. MSJ"), Dkt. No. 198.

In 2005, Mr. Moussazadeh filed this lawsuit seeking relief from TDCJ's failure to accommodate

his request for a kosher diet.  Pl. MSJ at 8; Def. MSJ at 2.  At that time, Mr. Moussazadeh was

housed in TDCJ's Eastham Unit, where Defendants did not provide him kosher meals.  Pl. MSJ

at 8; Def. MSJ at 2.  Currently, Mr. Moussazadeh is housed in the Stiles Unit, which TDCJ has

---

[1] The United States relies on the facts as presented in the Parties' Motions for Summary
Judgment for the purposes of this Statement of Interest.

labeled a "Basic Designated Jewish Unit," but where Defendants do not provide him with kosher meals. Pl. MSJ at 14; Def. MSJ at 16-17.

TDCJ's current dietary policy and practice is to provide kosher meals only to inmates assigned to the Enhanced Designated Jewish Unit, located in the Stringfellow Unit.[2] Def. MSJ at 12; Pl. MSJ at 11. Those kosher meals are provided via a kosher kitchen located at the Stringfellow Unit. *Id.* TDCJ does not provide inmates assigned to the Basic Designated Jewish Units with kosher meals. Instead, TDCJ policy states that inmates in Basic Designated Jewish Units may purchase kosher entrees and other kosher products through the commissary at the inmate's expense. *Id.*

Mr. Moussazadeh and Defendants filed cross motions for summary judgment on December 10, 2010. Those motions have now been fully briefed and are presently pending before the Court.

## ARGUMENT

In 2000, Congress enacted RLUIPA after "document[ing], in hearings spanning three years, that 'frivolous or arbitrary' barriers impeded institutionalized persons' religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005) (citing 146 Cong. Rec. 16698, 16699 (2000)). As the Supreme Court explained, an institution's refusal to accommodate a religious diet is the type of restriction on religious exercise that Congress enacted RLUIPA to eliminate. *See Cutter*, 544 U.S. at 716 n.5 (noting "typical examples" of barriers impeding religious exercise included refusal to provide halal food to Muslim inmates while offering kosher food to Jewish prisoners, and unwillingness to provide Jewish inmates with sack lunches to facilitate breaking fasts after

---

[2] For a short period of this litigation, Mr. Moussazadeh was housed in the Stringfellow Unit, and Defendants provided him with kosher meals. In 2009, however, Defendants transferred him to the Stiles Unit, where Defendants have not provided him kosher meals.

nightfall).  RLUIPA's purpose was to "protect[] institutionalized persons who are unable freely

to attend to their religious needs and are therefore dependent on the government's permission

and accommodation for exercise of their religion."  *Id.* at 721.

## I.    RLUIPA Grants Broad Protections to Religious Exercise by Institutionalized Persons.

RLUIPA erects a high bar to institutions seeking to burden the religious practice of

institutionalized persons, adopting a compelling state interest test.  RLUIPA requires that the

statute "be construed in favor of a broad protection of religious exercise, to the maximum extent

permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g); *see also*

*Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006) ("Congress . . . intended to provide as much

protection as possible to prisoners' religious rights without overly encumbering prison

operations.  RLUIPA's heightened protection stemmed from Congress's recognition that the

right of inmates (and other institutionalized persons) to practice their faith is at the mercy of

those running the institution.  As the Supreme Court has stressed, inmates are subject to a degree

of governmental control unparalleled in civilian society and severely disabling to private

religious exercise.").

RLUIPA's adoption of the compelling state interest test requires that courts apply the

most exacting level of scrutiny to an institution's denial of a religious accommodation.

Accordingly, once Mr. Moussazadeh establishes a prima facie case that Defendants have

substantially burdened his religious exercise, RLUIPA shifts the burden to Defendants to prove

that their restriction materially furthers a compelling governmental interest, and that the

restriction is the least restrictive alternative for furthering that interest.  42 U.S.C. § 2000cc-2(b).

Defendants' conclusory statements do not satisfy this high burden; they have not demonstrated

that their refusal to provide Mr. Moussazadeh with kosher meals furthers a compelling

governmental interest, or that their refusal is the least restrictive means of furthering that interest.

## II.   Defendants Have Not Demonstrated a Compelling Government Interest for Refusing Mr. Moussazadeh's Request for Religious Accommodation.

### A.   Cost Alone Is Not a Compelling Governmental Interest.

The sole interest Defendants assert for their refusal to provide kosher meals to Mr.

Moussazadeh is a desire to control costs. Def. MSJ 25-47; Def. Opp. at 12-13.  RLUIPA's text

and repeated court decisions show cost alone is not a compelling governmental interest.

RLUIPA itself states that compliance with its terms may require increased costs.

42 U.S.C. § 2000cc-3(c) ("[T]his chapter may require a government to incur expenses in its own

operations to avoid imposing a substantial burden on religious exercise.").  Beyond this specific

textual recognition that cost alone cannot justify a substantial burden on religious exercise,

RLUIPA also adopted the compelling government interest test, and thus imported the existing

legal precedent establishing that cost alone is not a compelling governmental interest.  *See, e.g.,*

*Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 264 (1974) ("conservation of the taxpayers'

purse" is not a compelling government interest); *see also NLRB v. Town & Country Elec., Inc.,*

516 U.S. 85, 94, (1995) (courts interpreting statute must infer, unless the statute otherwise

dictates, that Congress means to incorporate the established meaning of term).[3]

---

[3] In cases such as *Turner v. Safley*, 482 U.S. 78 (1987) and *Employment Division, Department of Human Resources v. Smith*, 494 U.S. 872 (1990), the Supreme Court held that, in certain circumstances, burdens on religious exercise need not satisfy the strict scrutiny analysis generally applied under the First Amendment.  *Turner*, 482 U.S. at 89 (holding that prison rules did not need to satisfy a compelling government interest to impinge on constitutional rights, but need only be reasonably related to legitimate penological interests); *Emp't Div., Dep't*, 494 U.S. at 877-82 (holding that First Amendment does not prohibit governments from burdening religious practices through generally applicable laws); *see Sherbert v. Verner*, 374 U.S. 398, 402-03 (1963) (holding that governmental actions that substantially burden a religious practice must

In addition to RLUIPA's text, courts have repeatedly held that costs alone fail RLUIPA's compelling government interest requirement. *See, e.g., Koger v. Bryan*, 523 F.3d 789, 800 (7th Cir. 2008) ("recognizing that, although budgetary considerations are "legitimate concerns of prison officials . . . no appellate court has ever found these to be compelling interests."); *Willis v. Ind. Dep't of Corr.*, ---F.Supp.2d ---, 2010 WL 4457432, at *8 (S.D. Ind. Nov. 1, 2010) ("[A]ccommodating a religious practice will generally be more expensive than a failure to accommodate; as such, RLUIPA specifically contemplates that the law 'may require a government to incur expenses in its own operations to avoid imposing a substantial burden.' Because the statute expressly anticipates increased costs, the fact that such diets may be more costly than non-religious diets is not alone a compelling governmental interest under the statute."); *Rouser v. White*, 630 F. Supp. 2d 1165, 1185 (E.D. Cal. 2009) ("The court is aware of no authority – and the defendants have directed it to none – that has held that cost is a compelling government interest under RLUIPA when a prison policy or practice was at issue."); *El-Tabech v. Clarke*, No. 4:04CV3231, 2007 WL 2066510, at *3 (D. Neb. July 17, 2007) (finding "incredulous" defendant's claim that budgetary interests kept it from obtaining kosher items from a vendor and ordered the parties to "negotiate the feasibility of . . ..[s]upplying inmates with prepackaged kosher meals"); *Elsinore Christian Ctr. v. City of Lake Elsinore*, 291 F. Supp. 2d 1083, 1093-94 (C.D. Cal. 2003) (cost not a compelling interest under RLUIPA);

---

be justified by a compelling governmental interest). Congress responded by enacting the Religious Freedom Restoration Act of 1993 ("RFRA"), 107 Stat. 1488, *as amended*, 42 U.S.C. § 2000bb *et seq.*, which reinstated the strict scrutiny standard for burdens on religious exercise. *See, e.g., Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006). But in *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court struck down RFRA as applied to state and local jurisdictions. Congress again responded, enacting RLUIPA, which sought to reinstate the strict scrutiny standard in certain contexts, including those at issue here. *See Cutter*, 544 U.S. at 714-17.

6

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1228 (C.D. Cal. 2002) (same).

These decisions align with settled jurisprudence establishing that, except in extraordinary circumstances, cost considerations are not compelling for purposes of strict scrutiny analysis. *See Mem. Hosp.*, 415 U.S. at 264; *see also Udey v. Kastner*, 805 F.2d 1218, 1220 (5th Cir. 1986) ("[A]lthough we recognize that costs are a valid consideration for First Amendment purposes, we have stated in other prison suits that 'inadequate resources can never be an adequate justification for depriving any person of his constitutional rights.'") (citation omitted).

### B. Under Fifth Circuit Law, Cost Is Not a Compelling Governmental Interest.

Fifth Circuit precedent is consistent with the case law cited above rejecting cost alone as a compelling governmental interest. In *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), the Fifth Circuit found that cost was one of several factors that, depending on the facts of the case, could constitute a compelling government interest. In *Baranowski*, the court held that, on the specific factual evidence presented, the pro se plaintiff had not demonstrated a RLUIPA violation where TDCJ refused to provide him with kosher meals. Contrary to Defendants' assertion, the *Baranowski* court did not recognize that TDCJ's "interest in maintaining costs in the feeding of its prison population" was, in itself, a compelling governmental interest. *See* Def. MSJ at 17. Rather, the *Baranowski* court considered several factors asserted by the defendants, namely defendants' contentions that offering kosher meals to Baranowski would: (1) increase costs so significantly that TDCJ's ability to provide a nutritionally appropriate meal to other offenders would be jeopardized; (2) breed resentment among inmates that would result in security risk, and; (3) lead to increased demand by other religious groups for similar diets. 486 F.3d at 125.

7

In considering the defendants' multiple asserted factors, the *Baranowski* court expressly followed the Supreme Court's holding that "context matters" for the compelling government interest standard. *Baranowski*, 486 F.3d at 125 (quoting *Cutter*, 544 U.S. at 723). After noting that the pro se plaintiff had not disputed any of the assertions proffered by the defendants on summary judgment, the court found that "*[b]ased on the record before us*, we hold that this policy is related to maintaining good order and controlling costs and, as such, involves compelling government interests." *Baranowski*, 486 F.3d at 125 (emphasis added). Accordingly, *Baranowski* did not find, even on the facts of the case, that cost alone could qualify as a compelling government interest. *See Willis*, 2010 WL 4457432 at *9 ("budgetary shortfall . . . is not itself a *Baranowski* factor," and "[i]nsofar as the [defendant] asks that the Court find that a budgetary shortage alone can qualify as a compelling interest, the Court must reject that claim." ) (citing *Cutter*, 544 U.S. at 709).

The evidence presented in the instant case is substantially different from what was presented to the court in *Baranowski*. *Cf. McAlister v. Livingston*, 348 F. App'x 923, 937 (5th Cir. 2009) (reviewing TDCJ volunteer policy even though court had previously rendered decision on that policy in *Baranowski* because McAlister presented different facts, and RLUIPA requires a fact-specific, case-by-case review). As an initial matter, unlike *Baranowski*, Defendants here assert cost-savings as the only interest furthered by their refusal to provide kosher meals to Moussazadeh, and do not combine that interest with interests in maintaining order and discipline. Furthermore, Mr. Moussazadeh has introduced evidence that TDCJ severely overestimated budgetary concerns in *Baranowski*. *See, e.g.*, Pl. MSJ Reply at 8-11. Mr. Moussazadeh has also introduced evidence that the other concerns cited by TDCJ in *Baranowski* as justifying their policy (breeding resentment among inmates that would result in

8

security risk and leading to increased demand for religious diets by other religious groups) are

unfounded, extensively citing the experience of other corrections systems that have successfully

provided kosher meals to inmates throughout their housing units for years.

Thus, contrary to Defendants' assertions, the Fifth Circuit's *Baranowski* decision does

not compel the conclusion that Defendants' refusal to provide a kosher diet to Mr. Moussazadeh

furthers a compelling governmental interest. Rather, the court in *Baranowski* concluded that cost

could be considered in combination with other interests, but Defendants have failed to assert any

other interests here.

III.    **Defendants Have Not Demonstrated That Their Refusal To Provide
        Mr. Moussazadeh with a Kosher Diet Specifically Furthers Their Asserted
        Governmental Interest.**

Even if cost control were a compelling governmental interest in itself, Defendants cannot

merely assert an interest in controlling costs to satisfy RLUIPA.  Instead, Defendants must show

that the restriction is in actual furtherance of their cited compelling interest - a tangential or

tenuous relationship between the policy and the interest is insufficient. *See* 42 U.S.C. § 2000cc-

1(a)(1).  Specifically, Defendants have the burden of showing that cost savings, their only

asserted compelling interest, is actually furthered by refusing to provide Mr. Moussazadeh with

kosher meals.  42 U.S.C. § 2000cc-1(a) (prohibiting government imposition of a substantial

burden on "religious exercise of a person" unless "the government demonstrates that imposition

of the burden on *that person*" furthers a compelling government interest) (emphasis added); *see,

e.g., Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009) ("[T]he state may not merely reference an

interest in security or institutional order in order to justify its actions."); *Washington v. Klem*, 497

F.3d 272, 283 (3d Cir. 2007) ("Even in light of the substantial deference given to prison

authorities, the mere assertion of security or health reasons is not, by itself, enough for the

9

Government to satisfy the compelling governmental interest requirement. Rather, the particular policy must further this interest."); *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988-89 (8th Cir. 2004) ("[Officials] must do more than offer conclusory statements and offer post hoc rationalizations.").

While Defendants have made general assertions about cost savings, they have not cited evidence that the cost savings accrued by their refusal to provide Mr. Moussazadeh with a kosher diet is more than merely marginal. Indeed, Defendants used to provide Mr. Moussazadeh with a kosher meal in the past, and still provide prisoners on the Stringfellow Unit with kosher meals, undermining their assertion that providing Mr. Moussazadeh with a kosher meal is cost-prohibitive. Thus, Defendants' cursory assertion of cost savings is not enough to meet their burden of demonstrating that a compelling interest is at stake. *See* 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA) ("Joint Statement"), ("[I]nadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements." (quoting S. Rep. No. 103-111 at 10 (1993))); *see also Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 39 (1st Cir. 2007) ("[M]erely stating a compelling interest does not fully satisfy [State]'s burden on this element of RLUIPA").

IV. **Defendants Have Not Demonstrated That Their Refusal To Provide Mr. Moussazadeh with a Kosher Diet Is the Least Restrictive Means To Further Defendants' Asserted Governmental Interest.**

Similarly, Defendants have also not demonstrated that, even if cost control were a compelling governmental interest in itself, their refusal to provide Mr. Moussazadeh with kosher meals is the least restrictive means to further this purported interest. As the Supreme Court explained, "[t]o survive strict scrutiny . . . a State must do more than assert a compelling state

interest—it must *demonstrate* that its law is *necessary* to serve the asserted interest." *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (emphases added).[4]  Instead, where less restrictive alternatives are available, state officials must consider and offer a legitimate reason for rejecting those alternatives.  *See, e.g., Washington v. Klem*, 497 F.3d 272, 284 (3d Cir. 2007); *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005) ("CDC cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice."); *Murphy*, 372 F.3d at 989 ("It is not clear that MDOC seriously considered any other alternatives, nor were any explored before the district court.").  Defendants fail to demonstrate that their refusal is the least restrictive alternative, because they fail to explain why numerous other jurisdictions provide kosher meals without unduly damaging the public fisc, Defendant's asserted compelling interest.

TDCJ's claim that it cannot afford to provide kosher meals is undermined by its inability to distinguish its purported interests from the interests of the numerous prison systems that do provide kosher meals.  The nation's largest penal institution – the Federal Bureau of Prisons ("BOP") – provides kosher meals to all Jewish inmates as part of its common fare program.  *See* 28 C.F.R. § 548.20 (federal policy); U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement No. 4700.05, *Religious Diet Program*, ch. 4 (June 12, 2006).[5]  When it enacted RLUIPA, Congress was cognizant of BOP's practices and experiences with religious

---

[4] RLUIPA's legislative history underscores this specificity requirement, explaining that "'inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements.'" 146 Cong. Rec. S7775 (daily ed. July 27, 2000) (quoting S. Rep. No. 103-111 at 10 (1993)).

[5] Available at http://www.bop.gov/policy/progstat/4700_005.pdf.

accommodations under the requirements of the RFRA (the pre-cursor to RLUIPA)[6] and used

BOP's experience as a touchstone for evaluating the practicality of RLUIPA's requirements.

*Cutter*, 544 U.S. at 726 ("For more than a decade, the federal Bureau of Prisons has managed the

largest correctional system in the Nation under the same heightened scrutiny standard as

RLUIPA without compromising prison security, public safety, or the constitutional rights of

other prisoners.  The Congress that enacted RLUIPA was aware of the Bureau's experience.")

(internal quotations omitted); *see also* 146 Cong. Rec. S7775 (daily ed. July 27, 2000) (letter

from Assistant Attorney General to Senator Hatch) ("We do not believe RLUIPA would have an

unreasonable impact on prison operations.  RFRA has been in effect in the Federal prison system

for six years and compliance with that statute has not been an unreasonable burden to the Federal

prison system.").

     Mr. Moussazadeh cites a 2006 study from the Michigan Department of Corrections that

found that 32 state prison systems provide kosher meals to prisoners upon request.  Pl. MSJ at 25

& Exhibit 2.  These prison systems accommodate anywhere from "an average of two (2), to an

average of one thousand-five hundred (1,500)" Jewish prisoners every day, either through use of

a kosher kitchen, provision of prepared kosher meals from outside vendors, or accommodation of

religious diets through a common fare program.  *Id.* at 3.  Although other state systems

undoubtedly have similar interests to TDCJ in controlling costs, many - including some with

larger Jewish prisoner populations than TDCJ - have successfully provided kosher food for years

using various alternative means, demonstrating that TDCJ's decision not to provide Mr.

Moussazadeh with any accommodation is not the least restrictive alternative.  Indeed, TDCJ used

to provide Mr. Moussazadeh himself with a kosher diet, and it still provides prisoners on the

---

[6] *See supra* note 2.

Stringfellow Unit with a kosher diet. *Cf. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) ("It is established in our strict scrutiny jurisprudence that 'a law cannot be regarded as protecting an interest of the "highest order" . . . when it leaves appreciable damage to that supposedly vital interest unprohibited.'") (citation omitted).

Defendants' only response to evidence that the BOP and 32 other states provide a kosher diet is to claim that RLUIPA does not "require state prison officials to adopt any religious accommodation that is recognized by other institutions" and that "there is room within RLUIPA for a particular prison to decline to join the 'lowest common denominator' when, in the discretion of its officials, there are better means to provide a particularized accommodation." Def. MSJ Opp. at 5. As other circuits have recognized, when an institution refuses to provide an accommodation that other institutions do provide, the practice of other institutions - which all share Defendants' budgetary concerns - is highly relevant to the legal question of whether this Defendants' refusal is, in fact, the least restrictive means necessary to serve the purported interests. *See Spratt*, 482 F.3d at 42 (Although "evidence of policies at one prison is not conclusive proof that the same policies would work at another institution," absent significant differences between the defendant system and the federal prison system, Federal Bureau of Prisons policy is relevant); *Warsoldier*, 418 F.3d at 1000 ("[W]e have found comparisons between institutions analytically useful when considering whether the government is employing the least restrictive means. Indeed, the failure of defendant to explain why another institution with the same compelling interests was able to accommodate the same religious practices may constitute a failure to establish that defendants was using the least restrictive means."); *see also Procunier v. Martinez*, 416 U.S. 396, 414 n.14 (1974) ("[T]he policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction.");

13

*Turner*, 482 U.S. at 97-98 (general allowance by federal Bureau of Prisons suggested that state prison had alternatives to prohibition on inmate marriage).

The success of BOP and state systems across the country in accommodating inmates' requests for kosher diets demonstrates that TDCJ's refusal to provide kosher meals outside of the Stringfellow Unit is a matter of preference rather than necessity.   RLUIPA, however, requires that TDCJ demonstrate that its refusal is one of necessity.  42 U.S.C. § 2000cc-1(a)(2). Accordingly, Defendants have failed to satisfy their burden under RLUIPA.

## CONCLUSION

Defendants have not met their burden of demonstrating that there is a compelling interest justifying the substantial burden they have placed on Mr. Moussazadeh, nor have they shown that their refusal to provide him with a kosher diet is the least restrictive means for furthering their asserted compelling interest.  Because Defendants have not met their obligations under RLUIPA, Defendants' Motion for Summary Judgment should be denied.[7]

Respectfully submitted,

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

SAMUEL R. BAGENSTOS
Principal Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
Special Litigation Section

---

[7] The United States requests the Court's permission to participate in any hearing on this matter.

14

TIMOTHY D. MYGATT
Special Counsel
Special Litigation Section


MATTHEW J. DONNELLY
Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Ave, NW
Washington, D.C.  20530
(202) 514-6255
(202) 514-514-0212 (fax)
matthew.donnelly@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on April 8, 2011, I caused a true copy of the forgoing Statement of Interest of the United States to be served, via e-mail and first class U.S. Mail, to the following:

*For the Plaintiff:*

Allen M Gardner
James C Knapp, Jr.
Matthew Todd Murchison
Anne Wylde Robinson
Latham & Watkins – D.C .
555 Eleventh Street, NW Suite 1000
Washington, D.C. 20004
allen.gardner@lw.com
James.knapp@lw.com
matthew.murchison@lw.com
anne.robinson@lw.com

Derek L Gaubatz
The Becket Fund
1350 Connecticut. Avenue NW, Suite 605
Washington, D.C. 20004
dgaubatz@becketfund.org

Eric Christopher Rassbach
Luke W Goodrich
The Becket Fund for Religious Liberty
3000 K Street NW, Suite 220
Washington, D.C. 20007
erassbach@becketfund.org
lgoodrich@becketfund.org

*For the Defendants:*

Celamaine Cunniff
M Carol Gardner
Office of the Texas Attorney General
PO Box 12548
Austin, TX 78711-2548
cela.cunniff@oag.state.tx.us
carol.gardner@oag.state.tx.us

George Baxter Ward, IV
Attorney at Law
221 West 6th Street
Suite 1050
Austin, TX 78701
gward@dwlawtx.com

*For the Amicus: The Becket Fund for Religious Liberty*

Eric Christopher Rassbach
The Becket Fund for Religious Liberty
3000 K Street NW, Suite 220
Washington, D.C. 20007
erassbach@becketfund.org

Respectfully submitted,

MATTHEW J. DONNELLY
Attorney for the United States